**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

| | | |
|---|---|---|
| DONNA HERRING O/B/O | * | |
| AMBER R. HERRING, | * | |
| | * | |
| Claimant, | * | |
| | * | |
| vs. | * | CASE NO.  4:04-CV-150 (GMF) |
| | * | |
| JO ANNE B. BARNHART, | * | |
| COMMISSIONER OF | * | |
| SOCIAL SECURITY, | * | |
| | * | |
| Defendant. | * | SOCIAL SECURITY APPEAL |

**<u>ORDER</u>**

The Social Security Commissioner, by adoption of the Administrative Law Judge's determination, denied Claimant's application for social security disability benefits, finding that she was not disabled within the meaning of the Social Security Act and Regulations. Claimant contends that the Commissioner's decision was in error, and she seeks review under the relevant provisions of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c).  All administrative remedies have been exhausted.  Both parties have filed their written consents for all proceedings to be conducted by the United States Magistrate Judge, including the entry of a final judgment directly appealable to the Eleventh Circuit Court of Appeals pursuant to 28 U.S.C. § 636(c)(3).

**LEGAL STANDARDS**

The court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996 (11th Cir. 1987).  Substantial evidence is defined

as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971).

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court may not decide facts, reweigh evidence, or substitute its judgment for that of the Secretary. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). It must, however, decide if the Secretary applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980).

The court must scrutinize the entire record to determine the reasonableness of the Secretary's factual findings. *Bloodsworth v. Heckler, supra*, at 1239. However, even if the evidence preponderates against the Secretary's decision, it must be affirmed if substantial evidence supports it. *Id*. The Secretary's failure to apply correct legal standards to the evidence presented is grounds for reversal. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 n. 8 (11th Cir.2004).

In a case where a child claimant is seeking entitlement to Title XVI benefits, the following definition of disability applies:

> An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C.A. § 1382c(a)(3)(C)(i) (2000).  Therefore, eligibility depends upon the presence of "marked and severe functional limitations." *See Welfare Reform Act*, Tittle II, Subtitle B, §211(a)(4)(1996).  A sequential evaluation process is used to determine if the child meets

this statutory definition of disability. 20 C.F.R. § 416.924 et seq. Step one requires the ALJ to determine whether the child is engaging in substantial gainful activity. If so, then the claim is denied. Step two requires that the ALJ determine whether or not the child has a severe impairment or combination of impairments in that it is more than a slight abnormality and causes more than minimal functional limitations. If not, then the claim is denied.

Step three requires the ALJ to decide whether the impairment is medically or functionally equivalent to impairments described in the listings of the regulations. To assess functional equivalence to a listed impairment, the ALJ must evaluate the level of the claimant child's ability to function in six domains: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for yourself; and 6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). If the child has "marked" limitations in two domains, or an "extreme" limitation in one domain, the child's impairment is the functional equivalent of the impairments listed in the Federal Regulations. 20 C.F.R. § 416.926a(a). A limitation is "marked" when the child's impairment or impairments seriously interfere with his ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). When measured by standardized testing, a marked limitation is generally indicated by scores "at least two, but less than three, standard deviations below the mean." *Id.* An "extreme" limitation causes very serious interference with the child's ability to independently initiate, sustain or complete activities and is usually associated with standardized test "scores that are at least three standard deviations below the mean." *Id.* § 416.926a(e)(3)(i).

**ISSUES**

Plaintiff raises the following issues:

I. Whether the Commissioner erred in finding that Claimant's impairments do not meet or equal the Listings for Depression, ADHD, Anxiety and Mental Retardation;

II. Whether the ALJ's analysis of the evidence was proper and based on substantial evidence.

**Administrative Proceedings**

Plaintiff, Donna Herring, is the mother of Amber Herring (hereinafter "Claimant"). Claimant was born on December 15, 1988. (R- 24). The Plaintiff filed an application for Child's Supplemental Security Income on December 1, 2000, due to asthma, attention deficit disorder, mood swings, seizures and a head abnormality. Her application was denied initially and after reconsideration. A hearing was held before the Administrative Law Judge (ALJ) on June 13, 2002 (R- 24-111). On December 6, 2002, the ALJ found that Claimant was not disabled. (R- 14-21). Plaintiff filed a request for review of the ALJ's decision. On September 29, 2004, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.

**DISCUSSION**

**I.  Did the ALJ err in finding that Claimant's mental impairments do not meet or equal the relevant listing?**

In her first enumeration of error, Plaintiff alleges that the ALJ erred in not finding that Claimant's depression, ADHD, anxiety disorder and mental retardation each either meet, equal or functionally equal the relevant Listings.

**A.     ADHD**

Plaintiff argues that Claimant's attention deficit disorder meets or "at least" equals the Listing for ADHD found in Section 112.11 (Plaintiff's Brief, p. 4).

The ALJ's decision reveals that he discussed the relevant medical evidence, including the evaluations and diagnoses of the physicians who had examined the Claimant. The ALJ specifically noted the opinion of the disability specialist who found that Claimant's mental impairments, although severe, did not meet or equal the relevant listing. (R- 16, 264). The consultative examiner, as noted by the ALJ, found that the Claimant suffered from depression, ruled out ADHD, oppositional defiant disorder and post traumatic stress disorder. (R- 261). The examiner, Donna Flietas, PhD, stated that Claimant exhibited deficits in independent functioning skills and recommended counseling for her depression. (R- 262). The ALJ also referenced a psychiatric/ psychological/mental evaluation by Dr. Sorkey, a physician who evaluated Claimant. (R- 273- 284). As noted above, in that evaluation, Dr. Sorkey found that Claimant's inattention, impulsiveness, and hyperactivity are all marked, and that she has marked limitations in cognitive/communicative functioning, social functioning and concentration, persistence and pace. (R- 16). The ALJ further referenced a second mental evaluation performed by Dr. Skinner which also found that the Claimant had marked limitations in the area of attention and also found that she had marked limitations in cognitive/communicative functioning, social functioning and concentration, persistence and pace. *Id.*

The ALJ also discussed the testimony of the Medical Expert who was called by the ALJ to assist him in making disability determinations, testified that, based on the evidence of record, that the Claimant did not meet or was not functionally equivalent to any childhood listing under [section] 112. (R- 65). When questioned by Plaintiff's attorney as to her behavioral problems, the medical expert testified that he disagreed with the impairment opinions of Dr. Sorkey and Dr. Skinner because he found that with medication, her symptoms had resolved themselves. (R- 66). The attorney then asked if the medical expert had experience in dealing with diagnosing and treating children with ADHD, and the expert said that did have such experience. *Id.* The expert then testified that in dealing with a child with "full blown ADHD" he would expect to see marked symptoms of hyperactivity "in any interaction with the child" which he stated were not exhibited by the Claimant. (R- 67).

In his decision, the ALJ noted that medical expert testified that he found the Claimant to be functioning at an age appropriate level. (R- 17). The ALJ further stated that even though the Plaintiff submitted psychiatric/psychological/mental evaluations showing that the Claimant had marked limitations of functioning, he found that the limitations contained in those evaluations were not supported by the medical record as a whole. (R-17). The ALJ found that Claimant's problems tend to "center around her homelife; not her or at school." As such, he found that the mental evaluations performed by Dr. Sorkey and Dr. Skinner were not accurate assessments of her level of functioning and cited to treatment notes from Dr. Aijaz Khalid to support his finding that she was functioning at a normal level. (R- 230-238).

6

Ultimately, the ALJ found that the limitations testified to by the medical expert accurately reflected the Claimant's state regarding her ADHD.

After reviewing the evidence and applicable regulations, this court finds no reversible error in the ALJ's finding that she did not meet or equal the Listing 112.11 for attention deficit disorder.

### B. Depressive Disorder

the Plaintiff also alleges that the ALJ erred in failing to find that Claimant's depression met or equaled the requirements set out in Listings 12.04. (Plaintiff's Brief p. 8). Listing 12.04 provides:

> Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied or when the requirements of C are satisfied.
> A. Medically documented persistence, either continuous or intermittent, of one of the following:
>     1. Depressive syndrome characterized by at least four of the following:
>         a. Anhedonia or pervasive loss of interest in almost all activities; or
>         b. Appetite disturbance with change in weight; or
>         c. Sleep disturbance; or
>         d. Psychomotor agitation or retardation; or
>         e. Decreased energy; or
>         f. Feelings of guilt or worthlessness; or
>         g. Difficulty concentrating or thinking; or
>         h. Thoughts of suicide; or
>         i. Hallucinations, delusions or paranoid thinking; or
> AND

> B. Resulting in at least two of the following:
>> 1. Marked restriction of activities of daily living; or
>> 2. Marked difficulties in maintaining social functioning; or
>> 3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
>> 4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms.
>
> OR
>
> C. Medically documented history of a chronic affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>> 1. Repeated episodes of decompensation, each of extended duration; or
>> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>> 3. Current history of 1 or more years inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.

Plaintiff argues that Claimant meets the first part of Listing in § 12.04 because there has been medically documented persistence, either continuous or intermittent, of depressive syndrome characterized by (a) anhedonia or pervasive loss of interest in almost all activities; (d) psychomotor agitation or retardation; (e) decreased energy; (h) thoughts of suicide; and (i) hallucinations, delusions or paranoid thinking. (Plaintiff's Brief, p. 8). In addition, Plaintiff states that the Claimant clearly displays physiological symptoms of depression and that she meets the requirements of Section B of Listing 112.04 which requires that she show that she possesses marked restriction of activities of daily living; marked difficulties in

8

maintaining social functioning; deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner; or repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms.

In reviewing the record, it appears that the ALJ reviewed the evidence submitted by the Plaintiff in support of her claim that the Claimant possessed a disabling depressive disorder. The ALJ analyzed the medical evidence and noted relevant testimony in his decision. The Plaintiff cites to psychological /mental evaluations performed by Dr. Sorkey and Dr. Skinner, wherein they diagnosed Claimant with depression, among other impairments. The ALJ discussed the opinion of the state agency consultant who found that Claimant's condition did not met any Listing. (R- 263-270). The ALJ further noted that the Claimant admitted she did not like school, but liked her teachers and friends. (R- 19). Additionally, the ALJ noted that Claimant seemed to do well in school, having no discipline problems except at home. *Id.*

The record also reveals, as noted above, that the ALJ relied on the testimony and opinions of the medical expert who testified that he reviewed the entire record in arriving at his conclusion that the Claimant did not meet the requirements of either subsection B or subsection C of section 112.04.

This court finds that substantial evidence supports the ALJ's decision. As such, it is without the authority to disturb the findings of the Commissioner as to this issue.

### C. Mental Retardation

Plaintiff also argues that the Claimant meets or equals the Listing for mental retardation, as found in Listing 12.05D and/or E. (Plaintiff's Brief, p. 8). Listing 12.05 states that mental retardation is noted to refer to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age twenty-two). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Section 12.05. Listing 12.05D, requires an IQ of "60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." *See,* Listing 112.05D. The additional limitation must be "severe" to meet this sub-listing. *Id.* 112.00(A). Sub-listing 112.05E requires an IQ of 60 through 70 and marked impairment in at least one of the following areas: social functioning, personal functioning, and maintaining concentration, persistence, or pace. *See,* Listing 12.05E.

In the case *sub judice*, the Plaintiff contends that the ALJ erroneously dismissed the Claimant's IQ scores, thereby erring in finding that she did not met the requirements of Listing 12.05. The record reveals that Dr. Biefiled gave the Claimant an IQ test in 1999, which revealed a Verbal score of 78, a Performance score of 64 and a Full Scale score of 69. In his notes, Dr. Bielefield noted that the Claimant's Full Scale IQ score may have underestimated her true intellectual level. (R- 282). The ALJ noted this and further noted that during his testimony, the medical expert testified that after reviewing the medical evidence, that he believed the Claimant's IQ scores would likely be in the 85 to 90 range,

thus precluding mental retardation. (R- 17).

The Plaintiff argues that Dr. Bielefield, Dr Sorkey or Dr. Skinner never specifically found the Claimant's IQ scores to be invalid. (Plaintiff's Brief, p. 12). She also argues that the ALJ didn't mention that the Claimant repeated the first and fourth grades, that she failed both the reading and math portions of school tests given in April and May of 1990 and that her scores on the Otis Lennon School Ability Test corroborated her IQ scores. *Id.*

However, as has been noted several times, the medical expert, who testified that he reviewed the whole record, was of the opinion that the IQ scores were invalid. The medical expert based his assessment on the notes of Dr. Bielefield who performed that test, in which he noted that he thought the IQ scores were an understatement of her intellectual abilities. (R- 57). He further relied on the Claimant's scores on the Wide Range Achievement Test, where Dr. Bielefield noted that her scores indicated that she appeared to be functioning at a level above what her IQ scores would indicate. (R- 282).

The Eleventh Circuit has held that even where a preponderance of the evidence could show that the Claimant's IQ scores were indeed valid, the court may not reverse the decision of the Commissioner if it is found to be based on substantial evidence. *See, Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). After looking at the evidence in this case, the ALJ's analysis of the evidence and reliance on the medical expert's testimony, it appears that the ALJ's decision is based on substantial evidence. This court, therefore, is without the authority to disturb the findings of the Commissioner as to the validity of the Claimant's IQ

scores.

## II. Was the ALJ's analysis of the evidence proper and based on substantial evidence?

In Plaintiff's second enumeration of error, she argues that the ALJ did not properly consider and weigh all of the evidence before him in finding that the Claimant was not disabled. (Plaintiff's Brief, p. 9).

First, the Plaintiff contends that the ALJ selectively cited evidence from the medical record to support his findings. (Plaintiff's Brief, p. 9). She argues that an ALJ is required to state the weight he assigns to all evidence and "has a duty to make clear the weight accorded to each item of evidence and the reasons for his decision." *Id.* at 10. That standard is legally correct. In reviewing the record, however, this court fails to find evidence that the ALJ was selective in choosing only evidence he found to support his conclusions. The ALJ's decision reflects the general evidence as a whole and evidences the reasoning he utilized in support of his ultimate findings.

Second, the Plaintiff contends that the ALJ did not specifically state which of the Claimant's impairments he found to be severe. *Id.* at 10. A review of the ALJ's decision, however, reveals that although he did not specifically state what impairments he found to be severe, it is not a leap of logic to determine what those are. He specifically discussed the evidence and medical expert's opinions as to Listings 122.02, 112.04 and 112.05. (R- 17). Those listings refer to ADHD, depressive disorder and mental retardation. He analyzed what he found to be relevant evidence in making his determination that the Claimant met or

12

equaled none of the Listings.

After thoroughly examining the record, it appears that the ALJ spent most of his opinion discussing the Claimant's impairments and their effects on her. Thus, the contention that the ALJ failed to make specific findings concerning her severe impairments lacks merit.

Third, the Plaintiff argues that the ALJ failed to make a specific finding as to the validity of her IQ scores. (Plaintiff's Brief, p. 11). She cites Listing section 112.00C.2.a to show that a valid IQ score is required for limited cognitive function. *Id.* The Plaintiff then states in her brief that the ALJ "apparently or by implication" found the IQ scores to be invalid. This court agrees.

The ALJ's decision establishes that he placed emphasis on, and relied on, the opinion of the medical expert. (R- 17). In relying on that expert testimony, then, it would follow that when he stated that the Claimant did not meet section 112.05 because her IQ scores were not valid, the ALJ also found them to be invalid based on the evidence. In fact, the ALJ stated in his decision that "the limitations testified to by the medical expert, after review of the medical record and testimony reflects the entirety of the Claimant's state." (R- 17). Because the ALJ did make a finding as to the validity of the Claimant's IQ scores, therefore, this contention lacks merit.

The Plaintiff also argues in this issue that the ALJ erroneously applied the adult standard of mental retardation to the Claimant. (Plaintiff's Brief, p. 13). This error is obviously typographical as it is plainly obvious that the ALJ cited the correct standard for

evaluating a child's functional equivalence with regard to Listing 12.05. (R- 17, 18).

Next, the Plaintiff argues that the ALJ committed error by not finding the opinions of Dr. Sorkey and Dr. Skinner "credible and definitive of Claimant's disability." (Plaintiff's Brief, p. 13). The Plaintiff is correct in stating that the ALJ did find that the evaluations performed by Dr. Sorkey and Dr. Skinner were not accurate assessments of the Claimant's abilities. (R- 17).

It is well settled that the opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding it. *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985). A treating physician's report may be discounted when it is not accompanied by objective medical evidence or when it is conclusory. *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). The ALJ can also reject the opinion of any physician when the evidence supports a contrary conclusion or when it is contrary to other statements or reports of the physician. *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991). *See also Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984).

In the case at bar, the ALJ provided good cause for discounting the opinions of Dr. Sorkey and Dr. Skinner. The ALJ noted that the record as a whole reflected that the Claimant's problems seemed to center around her homelife, and not her abilities at school. (R- 17). He stated that until recently, the Claimant had been a good student and that, based on an evaluation performed by Dr. Fleitas, her functioning was normal. *Id.* Furthermore, the ALJ, as noted above, relied on the findings of the medical expert, who was of the opinion

14

that the Claimant had less than marked limitations in some and no limitations in other areas of functioning, which contradicts the findings of Dr. Sorkey and Dr. Skinner.

The ALJ provided a thorough and detailed discussion of Claimant's medical history of record and found that Dr. Sorkey's and Dr. Skinner's findings were inconsistent with the record and not supported by the record as a whole. Thus, it appears the ALJ applied the proper legal standard in discounting the mental evaluations performed by Dr. Sorkey and Dr. Skinner. It is further found that the ALJ's analysis is supported by substantial evidence.

Lastly, the Plaintiff argues that the ALJ is required to address "all documentary evidence and the testimony of all witnesses who testify before him." (Plaintiff's Brief, p. 16). She argues that although the ALJ briefly mentioned the testimony of the Claimant's mother, the Plaintiff, he did not make adequate credibility findings. *Id.* The Eleventh Circuit has repeatedly held, however, that "[T]he credibility determination does not need to cite "'particular phrases or formulations'" but it cannot merely be a broad rejection which is "'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'" *Dyer v. Barnhart* 395 F.3d 1206, 1210 -1211 (11th Cir. 2005); citing *Foote v. Chater,* 67 F.3d 1553, 1561 (11th Cir. 1995) (quoting *Jamison v. Bowen,* 814 F.2d 585, 588-90 (11th Cir.1987)).

In the current case, the ALJ cited SSR 96-7p in stating what criteria he may utilize in making a credibility assessment. (R- 19). The ALJ then discussed factors, including the Claimant's functional impairments, that she had less than marked limitations in acquiring

15

and using information, attending and completing tasks, and interacting with others and no limitations in the areas of moving about/ manipulation, caring for self, and health/physical well being. (R- 19).  He also noted the Claimant's testimony that she likes her teachers and friends but doesn't like school, and that she thinks she's crazy because she tried to cut herself and that she gets along with others, except for her family. *Id.*  The ALJ further noted the fact that the Claimant has no discipline problems outside of the home, that she is developmentally normal and that she has no physical limitations. *Id.*  This court finds, therefore, that the ALJ made proper findings as to credibility and further finds that those determinations are based on substantial evidence.

## CONCLUSION

This Court finds that Plaintiff's contention that the ALJ committed error has no legal merit as the determinations made are completely within his judicial discretion.  Furthermore, the record fails to reveal evidence of the ALJ acting outside of his judicial role in determining the extent of the Claimant's disability.

Accordingly, it is hereby ordered that the ALJ's decision is AFFIRMED and the Plaintiff's Motion to Remand is DENIED.

THIS the 20th Day of June, 2005.

                                             S/ G. MALLON FAIRCLOTH
                                             UNITED STATES MAGISTRATE JUDGE

sWe